## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHAEL T. FLYNN,

      Plaintiff,

v.                                Case No.:   8:22-cv-01250

EVERETT STERN,

      Defendant.

_____/

### DEFENDANT'S MOTION TO TRANSFER VENUE

Defendant, EVERETT STERN, by and through the undersigned counsel, pursuant to 28 USC §1404, and Fed. R. Civ. P. 12(b)(3) Moves to Transfer Venue of this Action to The United States District Court in the Eastern District of Pennsylvania and as grounds therefor would state:

This is an action by a well-known public figure to recover damages from a private citizen of Pennsylvania for defamation *per se*. Plaintiff alleges Defendant has defamed him on YouTube, Twitter, and other internet sites by publishing allegations that Plaintiff is associated with the Patriot Caucus. The tweets included in the Complaint indicate Defendant has stated Plaintiff operates with the Patriot Caucus, directing them to put extensive pressure on sitting legislators, election officials, political candidates, and others, to demand audits of the 2020 election and seek to overthrow the election and reinstate President Trump. Defendant's tweets and the

material published from those tweets have indicated the Patriot Caucus felt entitled to use force and "domestic terrorism" to accomplish these goals.

Plaintiff denies an association with the Patriot Caucus or any instructions to use force against election officials. He further denies any use of pressure tactics or domestic terrorism in the current political context. He has sued Defendant for defamation *per se*. Plaintiff is a resident of Sarasota County. Defendant is a resident of Pennsylvania. The press conference described in the complaint was held in Philadelphia. The tweets originated from defendant's home, office, or campaign, all of which are in Pennsylvania.

As explained in more detail below, Defendant seeks to transfer venue of this action to the US District Court for the Eastern District of Pennsylvania, pursuant to 42 USC §1404(a).

## I.   STANDARD FOR A MOTION TO TRANSFER VENUE UNDER SECTION 1404(A)

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It is Defendant's burden to establish that the suggested forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570 (11th Cir. 1989); *Mitchell v. CJKANT Resource Group, LLC*, 2021 WL 2954308 (M.D. Fla. Feb. 17, 2021). Specifically, Defendant must establish that: (1) the action

2

could have been brought in the transferee court; (2) a transfer is in the convenience of the witnesses and parties; and (3) a transfer serves the interest of justice. *See Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011).

In order to overcome the presumption in favor of a plaintiff's choice of forum, a defendant must show the "balance of the conveniences is strongly in favor of the transfer." *Sterling v. Provident Life and Accident Ins. Co*., 519 F. Supp. 2d 1195, 1204-06 (M.D. Fla. 2007) (internal quotations and citations omitted) (emphasis added). In other words, Plaintiff's choice of forum should not be disturbed unless Defendant demonstrates Plaintiff's choice of forum is clearly outweighed by other considerations. *Id*. Defendant presents the following to establish he has met this burden.

When considering whether the balance of the conveniences of the witnesses and parties is "strongly" in favor of transfer, the Court should evaluate the following factors: (1) Plaintiff's initial choice of forum; (2) the convenience of the parties and witnesses; (3) the relative ease of access to sources of proof; (4) the availability of compulsory process for witnesses; (5) the location of relevant documents; (6) the parties' financial ability to bear the cost of the change; and (7) all other practical problems that make trial of the case easy, expeditious, and inexpensive. *Sterling*, 519 F. Supp. 2d at 1204-06. Defendant examines each of these factors.

## A.    Plaintiff's Initial Choice of Forum

Defendant does not claim Plaintiff's venue in the Middle District is improper; it is simply unrelated to the cause of action and unconnected to the facts and proof. While Defendant acknowledges Plaintiff's choice should be given some weight, as discussed below, the facts strongly show the Eastern District of Pennsylvania is a far superior venue than the Middle District of Florida. While Plaintiff resides in Sarasota, Plaintiff also travels extensively and hired counsel from Virginia to bring this action. Apparently, there is an insufficient nexus to the Tampa Bay Area to even prompt hiring local counsel to bring this claim.

## B.    The Eastern District of Pennsylvania is a Proper Venue

This case can be—and should be—transferred to the Eastern District of Pennsylvania (EDPA) under Section 1404(a). [A]n action 'might have been brought' in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court." *Carucel Investments, L.P. v. Novatel Wireless, Inc*., 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016). The EDPA meets each of these requirements.

First, the EDPA has subject matter jurisdiction under 28 USC §1332 because the parties are diverse and there is at least $75,000 in controversy. Second, venue is proper in the EDPA under 28 USC §1391(b)(2) because Defendant is domiciled there and "a substantial part of the events or omissions giving rise to the claim

occurred" in that district. The press conference at which Defendant made the allegedly defamatory statements was held in Philadelphia, which is in the jurisdiction of the EDPA. The press conference was attended by multiple media personnel, who heard Defendant's statements and it was from this location (or their local new office) that these personnel transmitted the statements to the broader world. In addition, Defendant's allegedly defamatory tweets on Twitter have been made from his home and while he has been campaigning for office in the EDPA jurisdiction.

## C.    The Eastern District of Pennsylvania is More Convenient for the Majority of Witnesses and Transfer Will Serve the Interests of Justice

In determining whether transfer is warranted, courts in the Eleventh Circuit consider nine private and public interest factors. *Carucel Investments, L.P.,* 157 F. Supp. 3d at 1224. The majority of the factors overwhelming favor transfer here, including, crucially, the convenience and availability of the witnesses.

### 1.    Critical non-party witnesses are subject to compulsory process in Pennsylvania, but not in Florida

"The Middle District of Florida 'gives great weight to the convenience of the parties and witnesses.'" *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1338 (M.D. Fla. 2011) (*quoting Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F.Supp.2d 1347, 1352 (M.D.Fla.1999)). In fact, "[t]he convenience of both the party and non-party witnesses is probably considered the single most important

factor in the analysis of whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC*, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (citations omitted); Here, the location of non-party witnesses compels transfer.

Not a single witness, other than Plaintiff himself, resides in Florida. Rather, virtually all of the critical non-party witnesses are located in Pennsylvania (or nearby states such as Virginia, New Jersey or Washington, DC). If this case proceeds to the trial stage, Defendant will assert various defenses including but not limited to substantial truth and Plaintiff's inability to establish either a false statement of defamatory fact or the actual malice that the First Amendment requires him to prove as a public official and figure. Plaintiff's Complaint references numerous persons who will be able to testify as to the truth of the matters alleged in the press conference, the twitter feed, and other articles, most of which live in Pennsylvania and none of which reside in Florida. These witnesses include:

**Mark Still**, President and Co-Chair of The Patriot Caucus.[1] Mr. Still is in a photograph contained in one of Defendant's tweets. He will have knowledge regarding the Patriot Caucus' connection to Plaintiff and their attempts to audit election results following the 2020 presidential election, which is the subject of most of Defendant's tweets.

**Doug Mastriano**, candidate for Governor of Pennsylvania.[2] Defendant believes he has knowledge about support for his candidacy from the Patriot Caucus and Mr. Flynn that will align with the tweets and statements made by Defendant.

---

[1] https://www.rightforbucks.com/event/rightforbucks-special-event-followed-by-entertainment-from-andy-meehan-the-rightforbucks-band/
[2] https://senatormastriano.com/

**Kathy Jean Barnette**, former candidate for US House in Pennsylvania.[3] Ms. Barnette is anticipated to testify regarding support from the Patriot Caucus that will align with Defendant's statements.

**Election Officials In Pennsylvania** – Multiple members of the Pennsylvania election offices were pressured by members of the Patriot Caucus to conduct audits of the 2020 election and are anticipated to support Defendant's statements regarding Plaintiff and the Patriot Caucus' campaign to undermine Pennsylvania's election integrity. While they may or may not be able to provide a direct link between these efforts and Mr. Flynn, their testimony will be a key building block in establishing the truth of Defendant's statements.

**Lawrence Tabas**, Chairman of the Republican Party of Pennsylvania.[4] Defendant believes Mr. Tabas will testify regarding Donald Trump's, Mr. Flynn's and the Patriot Caucus' influence over the Republican party in Pennsylvania and their efforts to overturn the 2020 election through the audit of the Pennsylvania election. His testimony will be a key building block in establishing the truth of Defendant's statements.

**Marzano Lee**, former Director of Security for Tactical Rabbit (Defendant's corporation). Mr. Lee is anticipated to testify regarding the evidence collected and acquired by Defendant which supports his statements and establishes their veracity.

**FBI Field Agents in the Philadelphia Office**. Defendant has been in regular contact with the FBI regarding the evidence that supports his statements about Plaintiff and Plaintiff's connections to the Patriot Caucus and the Patriot Caucus' questionable methods of trying to influence elections and overturn the 2020 presidential election. These are key witnesses who will corroborate Defendant's statements and may have additional evidence gathered in the course of the investigation.

**Thomas King**, attorney for the Pennsylvania Republican Party. Like Mr. Tapas, Mr. King is expected to have testimony regarding the Patriot Caucus' attempts to overturn the 2020 presidential election, discredit the integrity of the Pennsylvania election, and return Donald Trump to the White House. Mr. King may have knowledge of Plaintiff's connection to the Patriot Caucus and these efforts.

---

[3] https://en.wikipedia.org/wiki/Kathy_Barnette
[4] https://pagop.org/about/our-leadership/chair/

**Defendant's Friends, Employees, Campaign Staffers, and Family,** Plaintiff's accusations against Defendant must meet the actual malice standard required for public officials and no one knows Defendant's motivations and good faith better than his friends and family members who live and work with him on a daily basis, who have campaigned with him for the past year, and who have been privy to the information about Plaintiff's connections with, directions to, support of, and inspiration for the Patriot Caucus and its members and affiliated organizations.

**Defendant's Health Care Providers**, As stated in Defendant's affidavit, Defendant has undergone multiple surgical procedures, is experiencing significant pain, is expected to have more surgical procedures and suffers from conditions, limitations and restrictions that make travel to and from Florida for this case very difficult, if not impossible. The Health Care Providers are also expected to testify how the information learned by Defendant in regard to Plaintiff and his connection to and support of the Patriot Caucus and their goals to undermine American Democracy have impacted his physical health.

Other witnesses, such as Denver Riggleman, Al Hartman, Ivan Raiklin, Mark Mazzetti, Robert Draper, and members of the Congressional Select Committee to Investigate the January 6th Attack on the US Capitol are also expected to have relevant and meaningful testimony about the ongoing effort to undermine election integrity in the US, and the persons, caucuses, militias and other right-wing groups that are behind this movement. Whether they testify because they believe US elections have been undermined by the left and their actions and their groups are needed to restore integrity to US Elections, or because they witnessed the efforts by radical groups who are currently engaged in ongoing efforts to undermine election integrity, their testimony will be critical to establishing that Defendant's statements are true. These persons do not reside in Florida and are not subject to compulsory

process in Florida.

Almost all of the witnesses listed above are not witnesses over which Defendant has control. This is not a case where the bulk of the out-of-state witnesses are employees of the defendant. *See e.g., Mitchell v. CJKANT Resource Group, LLC*, 2021 WL 2954308, at *2 (M.D. Fla. Feb. 17, 2021). Here, the witnesses could be hostile to Defendant or, due to the political clout and influence of Plaintiff, only willing to testify if compelled to do so. These witnesses are the core of the defense; they personally experienced the pressure (extortion?) from the political powers with which Plaintiff is associated. Defendant's only experience with Plaintiff's influence and attempted pressure was in Pennsylvania elections. Thus, Pennsylvania politicians, candidates and election officials are his primary witnesses, whether voluntarily or compelled. Defendant has no ability to bring these critical witnesses to Tampa; thus, litigating this case in Pennsylvania is the only way for Defendant to have a fair trial.

Finally, Defendant's affidavit establishes Defendant has multiple medical conditions that prevent or make it very difficult for Defendant to travel to Florida for in-person attendance at any of the case proceedings. Defendant's personal appearance at in-person depositions and hearings is critically important for his defense. As evidenced by his affidavit, he suffers from significant physical limitations and such travel will be painful and could be precluded altogether if he

undergoes his fourth lumbar surgery.

The inability to call witnesses live is prejudicial and a reason to transfer venue. *See Delorenzo v. HP Enter. Servs., LLC,* 79 F.Supp. 3d 1277, 1283 (M.D. Fla. 2015) ("Each party's list of witnesses shows that, in the event a witness is unwilling to testify, the witness will likely reside within the territorial subpoena power of the District of Columbia, not the Middle District of Florida. This factor favors transfer."). "Given the fact that, when possible, live testimony is preferred over other means of presenting evidence," the ability to compel non-parties to testify in Pennsylvania is deemed "critical". *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004). Without that ability, Defendant will not be able to effectively defend this case.

### 2.    The locus of operative facts is Pennsylvania, not Florida

Defendant is still running for the US Senate seat in Pennsylvania and his integrity, and the validity of his accusations is critically important to that race. Further, all statements, tweets, and other communications were made from Pennsylvania and the press conference was held in Pennsylvania. The only connection between the communications and Florida is that some Florida residents read the tweets, viewed the videos, or read the articles. Even though Florida considers the receipt of such communications sufficient to support personal jurisdiction, *Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc*., 62008

WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (the harm from an online defamatory statement can occur in any place where the website or forum is viewed), the Complaint contains no allegations as to any actual damage (other than Plaintiff's possible embarrassment) that occurred in Florida. There are no allegations of lost employment in Florida, no allegations Plaintiff lost credentials necessary for his work, no allegation Plaintiff's fundraising abilities have decreased in Florida or anything of the like. The only allegation of damage is that Mr. Flynn "suffered direct pecuniary losses" as a result of Defendant's accusations. Nothing even infers Florida business opportunities were lost or that the pecuniary losses arose out of Florida-based or Florida-related transactions. There is simply nothing in the complaint to suggest any Florida witness will be needed to support Plaintiff's claims or oppose the defense.

Mr. Flynn's political activities and general work on conservative values occurs all over the United States. In fact, he is scheduled to be in Pennsylvania in October 2022, as part of his "Reawaken Tour."[5] Unlike Defendant, Plaintiff clearly, has no difficulty traveling, standing, sitting, and generally getting his message out to the public via in-person gatherings. In fact, given the political climate in Florida,

---

[5] https://www.salon.com/2022/03/17/donald-trump-michael-flynn-call-for-violence--theyre-not-kidding-but-the-media-doesnt-care/ ;
https://timesofsandiego.com/politics/2022/03/11/in-san-marcos-gen-flynn-gets-surfboard-eric-trump-accepts-q-painting-of-father/
https://www.youtube.com/watch?v=xyuLX8jfpaI

generally, and in Plaintiff's home county specifically,[6] Defendant's comments likely galvanized support and admiration for Plaintiff, rather than caused damage.

The mere fact that the communications were distributed globally on YouTube, including to Florida, is not sufficient to establish a locus of operative facts here. *See Game Controller Tech. LLC v. Sony Computer Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. 2014) (rejecting argument in patent infringement case that "sale of accused products in this District is sufficient to establish a locus of operative facts in the Southern District of Florida"). This factor "distinctly favors" transfer. *Delorenzo*, 79 F. Supp. 3d at 1282.

### 3.    Access to Proof Favors Pennsylvania Over Florida

Other than the compelled testimony of witnesses (discussed below), this factor is likely to be neutral. The majority of Defendant's evidence showing the truth of which he speaks is likely to be verbal testimony. Any non-verbal evidence to support Defendant is digital and can be accessed from anywhere, e.g., YouTube videos, Tweets, Text Messages, Emails.

### 4.    Availability of Compulsory Process for Witnesses

This fourth factor is the strongest reason why venue should be transferred to Pennsylvania. As noted above, the main focus of Defendant's statements is Plaintiff's attempts to impugn the integrity of America's elections, and Defendant's

---

[6] https://www.bestplaces.net/voting/city/florida/sarasota

own experience with these efforts in the Pennsylvania elections where he is actively involved. The proof of Plaintiff's pressure, influence, and tactics can only be provided by the people who experienced it and they are primarily in Pennsylvania. Even if the witnesses are not in Pennsylvania, they are certainly not in Florida.

None of these witnesses (other than Defendant's friends and family) can be compelled to come to Florida. Some of these witnesses may actually be hostile to Defendant. Most of them will likely try to remain as neutral as possible, due to Plaintiff's political strength. Consequently, only Plaintiff's own favorable witnesses will be willing to come to trial in Tampa without being compelled by subpoena. Live testimony is critical and keeping this case in Tampa virtually guarantees Defendant will have only one live witness and that witness will be suffering from the painful effects of prolonged travel.

### 5.    The Parties' Financial Ability to Bear the Cost of the Change

There is ample evidence Plaintiff is well-funded and has significant financial resources available to him. He is currently in the midst of a national tour for "Rewaken America," prompting him to travel widely throughout the country making speeches, stumping for candidates, and denigrating those who fail to agree with his vision of the American future. One website estimates Mr. Flynn's net worth at $1 million; another estimates it is between $480,000 - $1 million.[7] Since Plaintiff is

---

[7] https://www.scintillatingstars.com/michael-flynn-net-worth-2021-age-height-income-wife/

associated with very wealthy political donors, such as Charles and David Koch, it is possible he benefits from in-kind support, such as free flights on private jets.

Defendant has no such connections, pensions, supporters, or in-kind benefits. Litigating in Florida will cost him thousands of dollars he does not have. Forcing him to spend prolonged periods of time in Florida and other remote locations will also take him away from his work at Tactical Rabbit (or possibly the US Senate) thereby further costing him money. While the economics of each party is unknown, the information available at this time suggests this factor favors Defendant.

## C.    A TRANSFER TO PENNSYLVANIA SERVES THE INTERESTS OF JUSTICE

In *Mitchell*, 2021 WL 2954308, at *3, this Court noted there were four sub-factors to consider on the issue of whether the transfer serves the interest of justice: "(1) a court's interest in applying the laws of its own state; (2) the local community's interest in hearing localized controversies; (3) the burden of jury duty on people of the community; and (4) the congestion of the courts' respective dockets." *Id.* (quoting *Odem v. Centex Homes, Inc.*, No. 8:08-CV-166-T-27MAP, 2008 WL 11427941, at *3 (M.D. Fla. July 8, 2008).

### 1.    Constitutional Protections for Free Speech Eliminate Most Differences Between the State Laws

Florida's and Pennsylvania's Choice of Law principles in Defamation Actions

---

https://www.gobankingrates.com/net-worth/politicians/michael-flynn-net-worth/

are the same. They both utilize the "significant relationship" test rather than the *lex loci delicti* test. *See, Hemispherx Griffith v. United Airlines, Inc.,* 416 Pa. 1, 21, 203 A.2d 796, 805 (1964)(rejecting the strict *lex loci delicti* rule in favor of a more flexible approach which permits analysis of the policies and interests underlying the particular issue and determining which state has the most significant relationship to the issue); *Bishop v. Florida Specialty Paint Co*., 389 So.2d 999 (Fla.1980) (adopting the "significant relationships test," of the Restatement (Second) of Conflict of Laws §§ 145–46 (1971) for tort cases). While Florida has a two-year statute of limitation and Pennsylvania has a one-year statute, this action was brought within one year of the October 2021 press conference. Thus, the claim would not be barred in either state.

Pursuant to the First Amendment, both Florida and Pennsylvania must allow almost all speech directed at topics of public interest and related to public figures. In Florida, the standard for a public figure such as Plaintiff to recover damages for defamation are essentially mandated by the US Constitution and require: (1) a statement of fact, (2) which was false, and (3) made with "actual malice" that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *Palm Beach Newspapers, Inc. v. Early*, 334 So.2d 50, 52 (Fla. 4th DCA 1976) (*citing New York Times Company v. Sullivan,* 376 U.S. at 279-80 (1964)). In Pennsylvania, the elements of a defamation claim are set forth in §8343 of the

Uniform Single Publication Act, 42 Pa.C.S. §§8341-8345 which states:

    **(a)**    **Burden of plaintiff.**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

        (1)    The defamatory character of the communication.
        (2)    Its publication by the defendant.
        (3)    Its application to the plaintiff.
        (4)    The understanding of the recipient of its defamatory meaning.
        (5)    The understanding by the recipient of it as intended to be applied to the plaintiff.
        (6)    Special harm resulting to the plaintiff from its publication.
        (7)    Abuse of a conditionally privileged occasion.

    **(b)**    **Burden of defendant**.—In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

        (1)    The truth of the defamatory communication.
        (2)    The privileged character of the occasion on which it was published.
        (3)    The character of the subject matter of defamatory comment as of public concern.

42 Pa.C.S. §8343(a)-(b) (2022). This statute has been applied to defamation made on the internet. *See In re Philadelphia Newspapers, LLC,* 450 B.R. 99 (Bkrtcy. E.D. Pa. 2011) (citing multiple federal opinions).

However, as in Florida, the Pennsylvania Courts have stated, "[i]f the plaintiff is a public official or public figure, [he] must prove also that the defendant, in publishing the offending statement, acted with actual malice, i.e. with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Lewis v. Philadelphia Newspapers, Inc.*, 833 A.2d 185, 191 (Pa. Super. 2003) (*citing New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

The primary difference between the two states is Florida's category of defamation known as "defamation *per se.*"  *See e.g., Campbell v. Jacksonville Kennel Club*, 66 So.2d 495 (Fla. 1953) (an oral communication is actionable *per se* without a showing of special damage—if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity); *NITV, LLC v. Baker*, 61 So.3d 1249 (Fla. 4th DCA 2011)("communication that imputes to another conduct, characteristic or condition incompatible with the proper exercise of his lawful business, trade, profession, or office is slander per se); *see also,  Klayman v. Judicial Watch, Inc.*, 22 F.Supp.3d 1240 (S.D. Fla. 2014) (analyzing whether statement that plaintiff had been convicted of not paying child support was libel, *per se*). Where the statement qualifies as defamation *per se*, Plaintiff is entitled to a presumption that his reputation was damaged and is entitled to damages for that harm. Plaintiff is not required to prove actual damages from the damage to the reputation to recover a judgment.

Pennsylvania has no such rule. A plaintiff must always prove that a statement is defamatory **and** that the statement has caused actual damages. *See, Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237 (Pa. 1993); *Durando v. Trustees of*

*University of Pennsylvania*, 2022 WL 2192943 at *7 (E.D. Pa. June 17, 2022) (citing *Walker* and stating, "a slander *per se* plaintiff is required to show 'general damages' – proof of harm to reputation or personal humiliation – but not 'special damages' – proof of actual monetary loss.").

Because the two states laws are so similar, the only way this factor could weigh in favor of Plaintiff is if this Court concludes Florida has an interest in allowing public figures to recover damages from private individuals even when the individual's comments caused no harm to Plaintiff at all. There is nothing in Florida's public policy that creates such a strong interest in punishing private persons. Thus, at best, this factor should be considered neutral.

### 2.    The Other Factors Are Neutral

Given the content of Defendant's comments and the ongoing battle over election integrity throughout the country, it would be hard to say any of the remaining factors favored either Pennsylvania or Florida. Both states are certainly interested in the topic and communities in Sarasota or Bucks County would be equally interested in knowing the truth of Defendant's statements.

Further, there is certainly no greater burden on the Tampa Bay community or this Court's docket than the Philadelphia community or that court's docket. A comparison of the courts on the most recent Caseload Profile for the federal courts shows the docket load and median disposition time are comparable.

18

## **CONCLUSION**

The convenience of witnesses and ability to compel the witnesses to appear for testimony is a critically important factor in this case. Because Defendant's inability to present live witness testimony if this case remains in Florida is such a significant prejudice to his defense, this strongly outweighs Plaintiff's choice of forum, which provides minimal benefit to Plaintiff. Both states use the same choice of law analysis, so it is possible Florida law will apply to the claim regardless of its venue. This would eliminate Plaintiff's obligation to prove actual damages and render almost all factors other than the ability to access and compel witnesses neutral. Since these factors weigh so heavily in Defendant's favor, this Court should grant Defendant's Motion and Transfer this Action to the US District Court in the Eastern District of Pennsylvania.

[   CERTIFICATE OF SERVICE ON FOLLOWING PAGE    ]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing **Appearance as Counsel** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: Counsel for Plaintiff, **Jared J. Roberts, Esq.** and **Jason C. Greaves, Esq.**, at jared@binnall.com, jason@binnall.com, Binnall Law Group, PLLC, 717 King Street, Suite 200, Alexandria, VA 22314; on August 30, 2022.

/s/ Dorothy V. DiFiore

**Dorothy Venable DiFiore, Esq**., FBN: 0962139
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
dorothy.difiore@qpwblaw.com *primary*
Ronald.cochran@qpwblaw.com *secondary*
ddifiore.pleadings@qpwblaw.com *secondary*
1410 North Westshore Blvd., Suite 200
Tampa, FL 33607
Telephone: 813-286-8818
Facsimile:  813-286-9998
*Counsel for Defendant*