**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| | | |
|---|---|---|
| MICHAEL T. FLYNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 8:22-cv-01250 (TBS/AAS) |
| | ) | |
| EVERETT STERN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO TRANSFER VENUE**

Defendant wishes to move this case to Eastern District of Pennsylvania so that he can turn it into a self-promoting, political circus. As demonstrated by his own pleading and his filings in other venues, he wishes to harass Pennsylvania Republicans against whom he holds personal grudges, and who have no relevant knowledge. This blatant forum shopping should not be permitted, particularly when Defendant has lied to this court about being unable to travel.

**Background**

Defendant's Don Quixotesque crusade against Gen. Flynn continues apace. Since the filing of this lawsuit, he has tripled down on his defamatory statements, repeating his false accusations in multiple tweets, YouTube

videos, and even a book. He continues to direct such statements at Gen. Flynn in Florida and to other residents of Florida.

Defendant now claims that he will subpoena basically any prominent Republican who questioned the outcome of the 2020 election, including President Donald J. Trump, a Florida resident:



Defendant even crowd sources his "Depo List," asking "the American People" to suggest other subpoena targets in what he calls "[a] major opportunity for groundbreaking depositions & discovery."



According to Defendant's recently-published book, he has filed ethics complaints against three of the supposed witnesses he wishes to call—seeking to have them barred from the practice of law—and has forwarded those complaints to the DOJ and FBI, presumably to have them investigated and prosecuted further. First, he filed a complaint against Ivan Raiklin in New York, the basis of which is that Mr. Raiklin knew Velma Ann Ruth, who

Defendant claims "inferr[ed]" that she wanted Defendant to commit extortion and threatened to commit "domestic terrorism," a conversation for which Mr. Raiklin was apparently not present.[1] Second, he filed a disciplinary complaint against Thomas King and Lawrence Tabas in Pennsylvania—materially identical to the one filed against Mr. Raiklin—the sole basis of which is that Defendant told his hyperbolic story to King and Tabas, and they did not take him sufficiently seriously.[2]

Simultaneous to this litigation, Defendant is a party to other legal cases that bear on his supposed inability to travel. In Pennsylvania, he is a criminal defendant in a case of impersonating an officer,[3] where he argued to the court on July 22, 2022, that he needed to modify his bond to remove travel restrictions because "[Defendant] has a very important job in which the travel

---

[1] *See* Michael Stern, OFFICIAL MICHAEL T. FLYNN REPORT TO THE DOJ: GENERAL FLYNN'S ONGOING TREASON & DOMESTIC TERRORISM EFFORTS IN OVERTURNING THE 2020 U.S. ELECTION 75–118 (2022) ("[A]s seen in Image 0355 of Exhibit A, [Mr. Raiklin] is closely tied to the personnel that made the illegal comments—*effectively making him complicit in the conspiracy to commit domestic terrorism*.") (emphasis added). Defendant's complaint against Mr. Raiklin is attached as **Exhibit 1**.

[2] *See id.* at 125–50.

[3] *Comm. v. Stern*, No. CP-15-CR-0002123-2022 (Chester Cnty, Pa. 2022).

is essential."[4] In Palm Beach, Florida, he is the plaintiff in a personal injury action set for a seven-day jury trial, scheduled to go forward this month.[5]

## **Standard of Review**

As Defendant concedes, it is his burden to establish that his suggested forum is more convenient. Dkt. No. 22 at 2. Courts "should be somewhat restrictive in transferring actions." *American Aircraft Sales Intern., Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999). This is because "plaintiff's choice of forum should not be disturbed unless it is *clearly* outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (emphasis added) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)).

"[W]hen a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328-29 (M.D. Fla. 2010) (citing *Mason v.*

---

[4] *See* Michael Rellahan, *Senate candidate, facing charges, can travel freely, judge says*, DAILY LOCAL NEWS (July 23, 2022), *available at* https://www.dailylocal.com/2022/07/23/senate-candidate-facing-charges-can-travel-freely-judge-says/.

[5] *Stern v. Dav el of Palm Beach, Inc.*, No. 50-20190CA-000793 (Palm Beach Cnty., filed Jan. 18, 2019). The certified scheduling order, motion to continue trial, and order regarding medical evaluation are attached as **Exhibits 2, 3, and 4**.

*Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001)). Defendant must show that "the balance of convenience is '*strongly in favor*' of transfer." *American Aircraft Sales Intern., Inc.*, 55 F. Supp. 2d at 1351. "In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative." *Id.*

Determining whether to transfer venue is a two-step inquiry. *Nat'l Trust Ins. Co. v. Pennsylvania Nat'l Mutual Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016). The first step, determining whether venue is proper in the current district, has already been conceded by Defendant. Dkt. No. 22 at 4. The second, and operative step in this case, is to consider the convenience of the parties and witnesses and whether transfer serves the interest of justice. *See id.*

## ARGUMENT

Pursuant to 28 U.S.C. § 1391, and as conceded by Defendant, the Middle District of Florida is an appropriate venue in this case. While Defendant attempts to deflect this concession with a *non sequitur* about General Flynn hiring a Virginia-based law firm, the fact remains that General Flynn lives in Sarasota, Florida and has been damaged there. Accordingly, the first step of this Court's inquiry is satisfied.

Because this is General Flynn's choice of venue, this is entitled great deference. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The Eleventh

Circuit elaborated on this deference when holding that a "plaintiff's choice of forum should not be disturbed unless it is *clearly* outweighed by other considerations." *Robinson*, 74 F.3d at 260 (emphasis added). Further, General Flynn has "a great interest" in litigating in his home state. *Id*. at 259. *See also Lighting Sci. Grp. Corp. v. Sunoco Lighting, Inc.*, 2016 WL 7406660, at *2 (M.D. Fla. Oct. 20, 2016) (indicating that greater deference is afforded to a plaintiff's choice of forum when the plaintiff is at home).

When considering the second part of the inquiry, the Eleventh Circuit has identified several factors for courts to consider: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Each of these factors weighs against transferring venue.

1. *The convenience of the witnesses favors Florida.*

Defendant's motion has nothing to do with convenience of witnesses, which is the "most important factor under § 1404(a)"—rather, it is about the convenience of Defendant in attempting to make this case a political circus in

Pennsylvania. *See Valentino v. Eli Lilly & Co.*, 2015 WL 4352321, at *5 (M.D. Fla. July 14, 2015). Generally, convenience of the witness is only relevant to key witnesses. *Nat'l Trust Ins. Co.*, 223 F. Supp. 3d at 1243. "A witness is key if his or her testimony is likely to be significant enough that the witnesses's presence would be necessary at trial." *Id*. Many of the people identified by Plaintiff as supposed witnesses are not even relevant, much less key.

The only key witnesses in this case are Defendant—who travels frequently, including to Florida, where his parents live—and witnesses for Gen. Flynn, which will mostly be Florida residents. Other potentially relevant witnesses, who are identifed by Defendant in his defamatory allegations— Velma Ann Ruth, Mark Still, and Ivan Raiklin—have all committed to participating in this case and are willing to be deposed and travel to Florida for trial if necessary.

As for Lawrence Tabas and Thomas King, the only relevant information possessed by these two men, as demonstrated by Defendant's own bar complaint against them, is that he repeated his defamatory accusations to them.[6] To the extent that this would even be relevant or admissible evidence, it could be established through remote deposition or even a stipulation.

---

[6] *See* Stern, *supra* n.1 at 125–50.

Regarding Paul Mastriano and Kathy Barnette, it is apparent that Defendant's true goal is to force prominent Pennsylvania Republicans into this case and make it a political spectacle. Among Defendant's *many* tweets about Mastriano and Barnette, these examples demonstrate his animus toward them and his conspiratorial conclusions that they are traitors:



According to Defendant's argument, any politician who received an endorsement from Gen. Flynn or the support of Patriot Caucus would be a "key witness" in this case. He has proffered nothing to show why or how this would be relevant to the matter at hand: Defendant's defamatory allegations that

Gen. Flynn or his supposed agents committed domestic terrorism, extortion, and election crimes.

Defendant's bare speculation that they will confirm receiving the support of Patriot Caucus means nothing. As an initial matter, speculation of testimony is just that—speculation. *See Trinity Christian Ctr. of Santa Ana, Inc.*, 761 F. Supp. 2d at 1327.  Even assuming that this were their testimony, it is irrelevant. Gen. Flynn has never denied that he endorsed Barnette or Mastriano. He has no idea whether Patriot Caucus supported those candidates, but if they did, more power to them. The factual issue in this case is whether Gen. Flynn "runs" Patriot Caucus, and whether Patriot Caucus committed crimes on behalf of Gen. Flynn, as falsely and maliciously alleged by Defendant. Supporting a candidate is not a crime—Defendant's assertions to the contrary notwithstanding.

Also of note, Plaintiff misleadingly claims that he needs "FBI Field Agents in the Philadelphia Office," stating that he has "been in regular contact with the FBI" regarding his defamatory allegations. He fails to mention that the FBI agent with whom he communicated was from the *Miami* field office.[10] Indeed, the day after his defamatory press conference, when asked directly

---

[10] *See* Stern, *supra* n.1 at 82, 111–13.

about the FBI agents he was supposedly working with, Defendant admitted that he had no idea whether the FBI was even investigating his allegations:



Additionally, many of Defendant's anticipated witnesses can have their testimony presented via video deposition, thus avoiding the necessity of travel entirely. *See, e.g., In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012) (the availability of video depositions can be a consideration in analyzing a motion to transfer); *Anthem Leather, Inc. v. Kamino Intern. Transport, Inc.*, 2008 WL 516289, at *3 (N.D. Ga. Feb. 25, 2008) (party failed to show that videotape deposition would be inadequate); *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co.*, S.A., 2007 WL 2461817, at *4 (E.D. Tex. Aug. 27, 2007) ("With modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated."); *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 178 (E.D.N.Y. 2003) (the court did not find the inconvenience of the witnesses significant, even though many of the defendant's former employees might not come voluntarily to the current forum, due to the option of videotaping the testimony of witnesses unwilling to travel); *Quezada v. Darden Restaurants, Inc.*, 139 F. Supp. 2d 666, 668 (W.D. Pa. 2001)

(refusing transfer where the defendant had not demonstrated that videotaped depositions would be inadequate).

Finally, based on Defendant's recent tweets, he believes President Trump is a key witness.[11] Notably, President Trump is a Florida resident. This also applies to Joe Flynn, who Defendant says is a key witness and is also a Florida resident.[12]

The inconvenience that would attend to the many key Florida witnesses in this case is not outweighed by the inconvenience of Defendant's supposed Pennsylvania witnesses. None of Defendant's Pennsylvania witnesses are key to this litigation and many appear to be the targets of Defendant's decidedly *inconvenient* attempts to further smear and harass them. Defendant is attempting to shift the inconvenience and cannot show that the factors in transferring venue *clearly* outweigh Gen. Flynn's choice of venue, and his motion should be denied. *See Sec. Capital Holdings, Inc. v. Money Source, Inc.*, 2013 WL 5566071, at *5 (M.D. Fla. Oct. 8, 2013).

---

[11] Everett Stern (@EverettStern1), TWITTER (Sept. 10, 2022, 3:24 PM), https://twitter.com/EverettStern1/status/1568681745226268673.

[12] Everett Stern (@EverettStern1), TWITTER (Sept. 8, 2022, 10:53 AM), https://twitter.com/EverettStern1/status/1567888926991335425.

2. *The location or relevant documents and the relative ease of access to sources of proof do not warrant transfer.*

"This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial." *Trinity Christian Ctr. of Santa Ana, Inc.*, 761 F. Supp. 2d at 13287. Given technological advances, however, this factor is no longer heavily weighted. *Nat'l Trust Ins. Co.*, 223 F. Supp. 3d at 1243-44. This is even truer when a movant does not demonstrate the documents will be more difficult to produce in one forum rather than another. *Id.* at 1244.

Here, Defendant admits that all tangible evidence will likely be found online. Further, Defendant has not made any showing that it would be difficult to present this evidence in Florida. Accordingly, "this factor does not favor transfer." *Id.*

3. *The convenience of the parties weighs against transfer.*

Defendant's convenience in this matter should be afforded no weight, especially given his dishonesty with the Court. "[W]hen a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed." *Trinity Christian Ctr. of Santa Ana, Inc.*, 761 F. Supp. 2d at 1328-29.

Defendant has stated in a sworn affidavit that he is *precluded* from traveling to Florida to meet his obligations in this case due to his back

problems. Dkt. No. 22.1 at 4. He provides medical records for his back issues dating back to 2017, with his most recent operation in June 2021. And yet, he argued to a Chester County, Pennsylvania judge in July 2022 that he needed the ability to travel on short notice for his "very important job."[13]   Indeed, Defendant does travel frequently.

In November 2020, during the midst of Defendant's medical issues, Defendant posted a picture of himself giving a speech at Sweet Briar College in Lynchburg, Virginia.[15] In February 2021, according to campaign FEC filings, Defendant traveled to Santa Monica, California and stayed at a luxury beach resort, and in March 2021 apparently stayed at another luxury hotel in California at his campaign's expense.[16] In December 2021, Defendant tweeted about his drive home to Philadelphia from Washington, D.C.[18] On February 21, 2022, Defendant attended, in person, a Republican debate for Senate,

---

[13] Rellahan, *supra* n.3.

[15] Everett Stern (@EverettStern1), INSTAGRAM, https://www.instagram.com/everettstern1/?hl=en (last visited Sept. 7, 2022).

[16] *See* FEC DISBURSEMENTS, Everett Stern for U.S. Senate (last accessed Sept. 13, 2022) available at https://www.fec.gov/data/disbursements/?committee_id=C00766105&two_year_transaction_period=2022&data_type=processed. Screen captures are attached as **Exhibit 5**.

[18] Everett Stern (@EverettStern1), TWITTER (Dec. 15, 2021, 12:15 PM), https://twitter.com/EverettStern1/status/1471167257556529165.

where he stood at the podium for the debate.[19] In May 2022, Defendant even spent Memorial Day Weekend at an amusement park, Hershey Park.[20] On June 10, 2022, Defendant traveled to Jupiter, Florida for a medical evaluation in his personal injury case. *See* Ex. 4. Defendant is scheduled to return to Florida this month to attend his seven-day jury trial. *See* Ex. 2. While he has filed a motion to continue that trial date, he has done so on the basis of not having completed tax returns necessary for his damages expert, not because he is unable to travel. *See* Ex. 3.

Defendant apparently can, and indeed does, travel. Accordingly, Defendant's claim to be unable to travel should be given no weight.

    4.  *The locus of operative facts is the Middle District of Florida.*

The operative facts in this case involve the publication in Florida of defamatory material and the damage caused to Gen. Flynn in Florida. Florida law is clear that in an online defamation action, where material is placed on the internet, instantly available to all, the central issue for determining venue is not where the defendant wrote the material or placed it online, but where it was accessed in Florida and where the damages occurred. *See Lowery v. McBee*,

---

[19] Everett Stern (@EverettStern1), TWITTER (Feb. 23, 2022, 9:35 AM), https://twitter.com/EverettStern1/status/1496493835882532875.

[20] Everett Stern (@EverettStern1), TWITTER (May 30, 2022, 12:30 PM), https://twitter.com/EverettStern1/status/1531312080191639553.

322 So. 3d 110, 115–17 (Fla. App. 2021) (*citing Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010). In this case, Gen. Flynn has alleged that Defendant's defamatory material was accessed in Florida and that his damages occurred in Florida.

Defendant wishes to prove his conspiratorial allegations as a truth defense, yet his conspiracy now encompasses President Trump and Joseph Flynn, both Florida residents. Therefore, even crediting Defendant's delusions, this factor weighs in favor of Florida as the proper venue.

5. *The availability of process to compel the attendance of unwilling witnesses does not help Defendant.*

Availability of process to compel attendance of unwilling witnesses does not support transfer. As explained above, many of Defendant's anticipated witnesses are willing to attending trial in Florida. Mark Still, who is the only Pennsylvania witness with potentially relevant information, is one of them. The only potentially "unwilling" witnesses in Pennsylvania—King, Tabas, Mastriano, and Barnette—have no relevant knowledge, and even if they did, there are legal mechanisms available for compelling an out-of-state deposition. Moreover, as Defendant now wishes to subpoena Florida residents as key witnesses, the availability of process to compel testimony is a wash, at best.

6. *The relative means of the parties do not support transfer.*

Defendant's argument about the means of the parties again rests on nothing more than speculation. Defendant makes assumptions about Gen. Flynn's net worth and of wealthy political donors flying General Flynn for free to Pennsylvania on private jets. And while Gen. Flynn does not deny having the means to travel, if necessary, Defendant cannot say with a straight face that he does not.

Defendant owns a "private intelligence agency" that operates around the globe[21] and a hedge fund. He travels frequently for his "very important job." He is currently a candidate for U.S. Senate, for which he also travels and stays at luxurious hotels. *See* Ex. 5.  Defendant has over 50,000 Twitter followers— a number which has only increased since the beginning of this litigation—of whom he regularly asks to donate to his GoFundMe to pay for his expenses in this proceeding to "help protect democracy" and engage in discovery.[22] This GoFundMe has raised over $4,500 to date.[23] Defendant is further profiting off

---

[21] *See* TACTICAL RABBIT, *Where We Operate*, (last accessed Sept. 13, 2022), https://tacticalrabbit.com/.

[22] *See, e.g.*, Everett Stern (@EverettStern1), TWITTER (Aug. 27, 2022, 1:00 PM), https://twitter.com/EverettStern1/status/1563572092666519558.

[23] "Everett Stern v General Flynn Security & Legal," GOFUNDME, (last accessed Sept. 13, 2022) https://www.gofundme.com/f/everett-stern-v-general-flynn-legal-

this litigation by selling a book on Amazon discussing "General Flynn's Ongoing Treason & Domestic Terrorism Efforts."[24] Since the start of this litigation, Defendant has feverishly tweeted about this case and used it to grow his social media following. He has raised money off this case and continues to do so. Further, Defendant seems willing to drag this case out, quoting Winston Churchill with his own twist:

> Mike T Flynn with your crimes against the U.S. Government: We shall go on to the end!!! we shall fight on the seas and oceans, we shall fight with growing confidence and growing strength in the air, we shall defend Democracy, whatever the cost may be, we shall never surrender!!!![25]

To say that he does not have financial support is simply inaccurate. While Defendant also claims this will cost him future earnings by being away from his work, the same is true of Gen. Flynn, and transferring the case would merely shift that inconvenience. Accordingly, this factor does not warrant transfer; this is especially true when it is Defendant himself who seems to want a prolonged legal battle.

---

fund?utm_medium=social&utm_source=twitter&utm_campaign=p_lico+share-sheet.

[24] *See* Stern, *supra* n.1.

[25] Everett Stern (@EverettStern1), TWITTER (Aug. 7, 2022, 12:15, PM), https://twitter.com/EverettStern1/status/1556312980329054209.

*7. Both forums have familiarity with the governing law; however, a Florida Court is better suited to determine Florida law.*

Both forums have extensively developed case law regarding causes of action for defamation. As Defendant notes, both states also employ the significant relationship test. Dkt. No. 22 at 15. This test involves a consideration of several factors to determine which state has more contacts with the claim, to decide which law to use. Here, Defendant's lies were directed at a Florida resident, and the harm occurred in Florida. Thus, the significant relationship is to Florida, and Florida law will apply in either jurisdiction. Therefore, it would be best to have a Florida court determining Florida law. Even if Pennsylvania law applied, a "Florida court is fully competent to apply foreign law," and this factor would remain neutral. *Valentino*, 2015 WL 4352321, at *8 (citing *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007)).

*8. Plaintiff's choice of forum is accorded great weight.*

In this case, Defendant seeks to forum shop to a more favorable venue. As extensively briefed, a "plaintiff's choice of forum should not be disturbed unless it is *clearly* outweighed by other considerations." *Robinson*, 74 F.3d at 260 (emphasis added). Defendant must show that "the balance of convenience is '*strongly in favor*' of transfer." *American Aircraft Sales Intern., Inc.*, 55 F.

Supp. 2d at 1351. "In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative." *Id.*

> 9. *Trial efficiency and the interests of justice, based on the totality of the circumstances, are neutral as to transfer.*

Defendant concedes that this factor is neutral. Dkt. No. 22 at 18. Both forums have an interest in deciding this matter, and both have similar docket congestion. Florida has the added interest in protecting its residents from being defamed by persons in a foreign jurisdiction.

After analyzing every factor that the Eleventh Circuit employs in determining whether to transfer venue, not a single factor weighs in favor of Defendant. Defendant has not met his burden in showing that General Flynn's choice of forum is *clearly* outweighed by other considerations.

## Conclusion

Defendant had the burden of showing that other considerations *clearly* outweighed General Flynn's choice of venue. He has failed to do so. Moreover, Defendant's transparent forum shopping, his dishonesty with the Court, and his naked attempt to harass Pennsylvania Republicans and make a spectacle of this case should weigh heavily against transfer. Accordingly, General Flynn respectfully requests that this Court deny Defendant's Motion to Transfer Venue.

Dated: September 13, 2022          Respectfully, submitted

/s/ *Jason C. Greaves*
Jason C. Greaves (admitted pro hac vice)
Jared J. Roberts (Fl. Bar No. 1036550)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com
            jared@binnall.com

*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.


/s/ *Jason C. Greaves*
Jason C. Greaves

20